IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| November Acquisitions SPV LLC, December Acquisitions SPV LLC, Bad Gremlin LLC, Remora LLC <br><br> v. <br><br> Baruch Gottesman d/b/a/ Gottesman Legal Services. | Case No. |

**COMPLAINT**

Plaintiffs November Acquisitions SPV LLC, December Acquisitions SPV LLC, Bad Gremlin LLC, and Remora LLC submit the following as their Complaint against Defendant Baruch Gottesman d/b/a Gottesman Law:

1. Plaintiffs November Acquisitions SPV LLC ("November Acquisitions"), December Acquisitions SPV LLC "December Acquisitions") (collectively, the "Plaintiff LLCs") and Investors Bad Gremlin LLC ("Bad Gremlin"), Remora LLC ("Remora") (collectively, the "Plaintiff Investors") were defrauded of $23 million.

2. The Plaintiffs bring this action against Defendant Baruch Gottesman ("Gottesman"), sometimes doing business as "Gottesman Law" and sometimes as "Gottesman Legal Services" for professional malpractice, including breach of fiduciary duty, professional negligence, and for tortious conduct, negligent misrepresentation, without which Plaintiffs would not have suffered these losses.

## PARTIES

3. Plaintiff November Acquisitions is a Delaware limited liability company formed on November 17, 2021, with its principal place of business in Chicago Illinois. As of that date, defendant Gottesman served as counsel to November Acquisitions. Gottesman signed its Certificate of Formation and submitted supporting documents to the State of Delaware on its behalf. Gottesman also served as its Investor Relations officer. Sean Grusd was the initial Managing Member of November Acquisitions from November 17, 2021 until December 2022, when Plaintiffs discovered Grusd's fraudulent activity and theft of funds from November Acquisitions. On December 29, 2022, Grusd resigned as Managing Member of November Acquisitions and was replaced as Managing Member by Plaintiff Remora Ventures LLC. The members of November Acquisitions are the following, none of whom are citizens of New York or New Jersey:

    a) Paul Clark is a citizen of the state of Illinois and resides in Chicago;

    b) Dirk LaBorne is a citizen of the state of Illinois and resides in Park Ridge;

    c) James Griffin is a citizen of Illinois and resides in Clarendon Hills;

    d) Robert Pooler is a citizen of Illinois and resides in LaGrange;

    e) John Stafford III, is a citizen of Illinois and resides in Chicago.

4. Plaintiff December Acquisitions is a Delaware limited liability company formed on December 26, 2021, with its principal place of business in Chicago Illinois. As of that date, defendant Gottesman served as counsel to December Acquisitions. In that capacity, Gottesman signed December's Certificate of Formation and submitted supporting documents with the State of Delaware on its behalf. Gottesman also served

as its Investor Relations officer. Sean Grusd was the initial Managing Member of December Acquisitions until December 2022, when Plaintiffs discovered his fraudulent activity and theft of funds from December Acquisitions. On December 29. 2022 Grusd resigned as Managing Member of December Acquisitions and was replaced as managing member by Plaintiff Bad Gremlin, LLC. The members of December Acquisitions are the following persons, none of whom are citizens of New York or New Jersey:

a) Nancy Beaumont is a citizen of the state of Illinois and resides in Vernon Hills;

b) Patrick Buck is a citizen of the state of Illinois and resides in Chicago;

c) Thomas Buck is a citizen of the state of Illinois and resides in Grayslake;

d) Kevin Gainer is a citizen of the state of Illinois and resides in Chicago;

e) John Favia Revocable Living Trust. John Favia is the trustee and beneficiary and a citizen of the state of Illinois and resides in Chicago;

f) DTS Roztylske Sady, S.R.O. Jan Horcicka is the member and is a citizen of the Czech Republic and resides in Prague;

g) Bad Gremlin LLC, a Delaware LLC is the current managing member of December Acquisitions SPV, LLC, and has its principal place of business in Chicago.

5. Plaintiff Bad Gremlin LLC ("Bad Gremlin") is a Delaware limited liability company. At all times relevant to this action Bad Gremlin has had its principal place of business in Chicago, Illinois. Bad Gremlin was created for the purpose of investing in Stripe Inc. ("Stripe") through December Acquisitions. The individual members of Bad Gremlin LLC, none of whom are citizens of New York or New Jersey are as follows:

a) Paul Clark is a citizen of the state of Illinois and resides in Chicago;

-3-

    b) Kevin Gainer is a citizen of the state of Illinois and resides in Chicago;

    c) James Griffin is a citizen of Illinois and resides in Clarendon Hills;

    d) Robert Pooler is a citizen of Illinois and resides in LaGrange;

    e) Sherpa National Holdings, LLC, an LLC the members of which are: Maryjo D'Avola, a citizen of Illinois residing in St. Charles; Giovanni and Josephine D'Avola, citizens of Illinois residing in Schaumburg; Francesco D'Avola, a citizen of Illinois, residing in Joliet;

    f) John Stafford III is a citizen of Illinois and residing in Chicago.

6. Plaintiff Remora Ventures LLC ("Remora"), is a Delaware limited liability company. At all times relevant to this action Remora has had its principal place of business in Chicago, Illinois. Remora was created for the purpose of investing in Klarna Bank, AB ("Klarna") through November Acquisitions. The members of Remora, none of whom are citizens of New York or New Jersey are as follows:

    a) Paul Clark is a citizen of the state of Illinois and resides in Chicago;

    b) Dirk LaBorne is a citizen of the state of Illinois and resides in Park Ridge;

    c) James Griffin is a citizen of the state of Illinois and resides in Clarendon Hills;

    d) Robert Pooler is a citizen of the state of Illinois and resides in LaGrange; and

    e) John Stafford III, is a citizen of the state of Illinois and resides in Chicago.

7. Defendant Gottesman is an attorney licensed in the States of New York (Bar No. 4480539) and New Jersey (Bar No. 02222-2006) and a citizen of New Jersey. Gottesman also does business as Gottesman Law and sometimes as Gottesman Legal Services. At all times relevant to this matter, Gottesman had offices at 185-12 Union Turnpike, Fresh Meadows, NY 11366 and at 9 Maplewood Terrace, Lakewood, New

Jersey 08701. Throughout the relevant time period, Gottesman was legal counsel to November Acquisitions and December Acquisitions. Gottesman also filled the position of Investor Relations officer for the Plaintiff LLCs. On information and belief, Gottesman may have performed other services for the Plaintiff LLCs as well.

8. Gottesman provided false or materially incomplete information to the Plaintiff Investors upon which they relied in making their investments in November Acquisitions and December Acquisitions. The false information provided by Gottesman enabled Grusd to continue to act as Managing Member of the Plaintiff LLCs even though the Plaintiff Investors—unbeknownst to themselves—were the only ones who had invested capital in the Plaintiff LLCs. Gottesman's false statements and material omissions were designed to and did in fact keep Plaintiffs in the dark until it was too late.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

10. November Acquisitions and its members are completely diverse from Gottesman. As set forth above, none are citizens of New York or New Jersey.

11. December Acquisitions and its members are completely diverse from Gottesman. As set forth above, none are citizens of New York or New Jersey.

12. Venue is proper in this Court and in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims

occurred in this judicial district. All but one of the Plaintiffs and their members have their principal places of business in Illinois or are residents of Illinois. (The other is a citizen of and resident in the Czech Republic.) Defendant Gotttesman—although only licensed in New York and New Jersey—agreed to perform legal services for the benefit of the Illinois Plaintiffs.

13. Gottesman provided false or incomplete, and therefore misleading, information to the Plaintiffs in Illinois. As a result, Plaintiffs suffered harm in Illinois.

**FACTS**

14. The original Managing Member of the Plaintiff LLCs, Sean Grusd, stole over $23 million from the Plaintiff LLCs and defrauded the Plaintiff Investors. Throughout Grusd's tenure as Managing Member of the Plaintiff LLCs, Gottesman served as attorney for the Plaintiff LLCs. He also served as the Investment Relations contact for those entities. With regard to certain critical material issues, including those set forth below, Gottesman acted as counsel for the Plaintiff LLCs, giving rise to fiduciary duties owed directly to the Plaintiff LLCs, not to their corrupt manager, Grusd.

*The Proof of Funds Letter*

15. At the outset, before any Plaintiff Investor made any investment in any entity managed by Grusd, Gottesman wrote a proof-of-funds letter that was forwarded to the Plaintiff Investors. In the letter, Gottesman states that he had independently undertaken due diligence to assure interested parties that the proposed managing

-6-

member of the Plaintiff LLCs, Grusd, was not only financially solvent, but that Grusd had personal assets in excess of $50 million.

16. On or about September 9, 2021, Gottesman prepared and signed a letter attesting that he had independently determined that Grusd had a personal net worth in excess of $50 million. (The "Proof-of-Funds" Letter Ex. 1) Gottesman asserted in the Proof of Funds Letter that he had personally reviewed documents and conferred with personnel at the bank (Wells Fargo) holding Grusd's assets. On this basis, Gottesman confirmed that Grusd had personal assets at Wells Fargo bank alone in excess of $50 million.

17. The Proof of Funds Letter was drafted and signed by Gottesman on September 9, 2021 and states in relevant part:

> This letter confirms the availability of certain funds in an account held by Sean Grusd at Wells Fargo Bank, N.A. as of August 31, 2021. The basis for this confirmation includes conversations with my client, a review of a bank statement, and a conversation with a Wells Fargo customer service representative.
>
> THEREFORE I CAN CONFIRM on the basis of the due diligence described above that as of August 31, 2021, an account held at Wells Fargo Bank, N.A. in the name of Sean Grusd holds freely available funds in the amount of not less than fifty million dollars ($50,000,000.00).

Ex. 1.

18. Gottesman's statements in the Proof of Funds letter were false. In fact, Grusd did not have an account at Wells Fargo Bank N.A. Nonetheless, Gottesman advised potential investors, including the Plaintiff LLCs and the Plaintiff Investors that

he had reviewed documentary evidence and spoken to a bank representative and that this constituted the basis to permit him to confirm the availability of "not less than fifty million dollars" in Grusd's Wells Fargo account. This statement, made negligently, with gross negligence or recklessness, was false. No customer service representative at Wells Fargo could have possibly corroborated Gottesman's representation that Wells Fargo held an account in Grusd's name with over $50 million on deposit, because no such account ever existed.

19. On or about October 20, 2021, December Acquisitions Investor Patrick Buck received Gottesman's Proof of Funds Letter. The letter was then circulated to others considering investment in the Plaintiff LLCs, managed at the time by Grusd and represented by their counsel, Gottesman. November Acquisitions and December Acquisitions received over $20 million in investments from the Investor Plaintiffs based on the false assurances in Gottesman's Proof of Funds Letter.

20. Absent Gottesman's negligent preparation and circulation of the Proof of Funds Letter and had Gottesman not falsely stated that he could confirm information that in fact did not exist, no one would have invested in either of the Plaintiff LLCs and Grusd's subsequent theft of $23 million would have been averted. But based on Gottesman's purported due diligence, Gottesman sought to, and did, convince the Plaintiffs to rely on Grusd's bona fides and enable Grusd to steal $23 million.

*Gottesman Prepared the Operating and Subscription Agreements Establishing and Governing the Plaintiff LLCs, Using Materially False Information.*

21. In addition, Gottesman negotiated, drafted and circulated for signature the Operating Agreements and Subscription Agreements for the Plaintiff LLCs. (Exs. 2-5). These documents--fundamental to the Plaintiff LLCs' ability to raise funds and governing their operations once established, being able to operate and fulfill the purposes for which they were organized--stated that there were other prominent investors who had agreed to invest substantial sums in November Acquisitions and December Acquisitions. In fact, no other investors had been contacted and none of the other purported investors ever signed subscription agreements or invested in either of the Plaintiff LLCs.

22. However, whether through negligence, gross negligence or recklessness, Gottesman represented that other investors did exist, were participating in the LLCs and would be investing in amounts equal to or greater the amounts contributed by the Investor Plaintiffs. Gottesman apparently never considered whether the statements he had authored in the Operating Agreements and Subscription Agreements were actually true and apparently took no steps that might have enabled him to verify the truth or falsity of these statements.

23. All of the money invested in November Acquisitions and December Acquisitions came from the Investor Plaintiffs, and none from Grusd or the other purported investors identified by Gottesman and identified in negotiations with the Plaintiff LLCs and again in the documents that Gottesman drafted. The Plaintiff

Investors had been told that their ownership shares of November Acquisitions and December Acquisitions were approximately ten percent of the total funding. In fact, there were no other investors; the Investor Plaintiffs contributed effectively 100 percent of the investment capital for the Plaintiff LLCs.

24. Thus, contrary to the Operating Agreements and Subscription Agreements drafted for the Plaintiff LLCs by Gottesman, the Investor Plaintiffs were not minority owners of the Plaintiff LLCs, but in fact had invested ALL of the equity capital.

25. Plaintiffs have subsequently learned that shortly after each capital investment in the Plaintiff LLCs by one of the Plaintiff Investors, LLC manager Grusd would remove the money from the Plaintiff LLC's account and deposit it in his own personal account.

26. Had Gottesman not been negligent and advised the Plaintiff LLCs and Plaintiff Investors that the Operating Agreements and Subscription Agreements had never been signed and funded by any party other than the Plaintiff Investors, the LLC Plaintiffs and Plaintiff Investors—as the *sole owners* of the equity in the LLCs-- could have acted to prevent (or promptly counteract) Grusd's subsequent theft of all of the Plaintiff LLCs' assets.

27. Gottesman negotiated, drafted and circulated operating agreements and subscription agreements that misrepresented essential facts—for example, that the LLCs would be fully capitalized by the investments of other sophisticated investors who were purportedly also investing their money in the Plaintiff LLCs. In fact, Gottesman was

negligent, grossly negligent or reckless, and knew or should have known that these representations were false, and that the "other investors" who were supposedly participating and providing 90 percent of the total investment in the Plaintiff LLCs, did not exist, or if the entities did exist, they had never heard of the Plaintiff LLCs and never agreed to participate in the Plaintiff LLCs in any way.

28. Absent Gottesman's negotiation, drafting and circulating the Operating Agreements and Subscription Agreements asserting these falsehoods, none of the Plaintiff Investors would have invested and none of the Plaintiff LLCs would have permitted Grusd to manage their assets. Had Gottesman not been negligent, grossly negligent and reckless, Grusd's ability to steal $23 million from the Plaintiff LLCs and Plaintiff Investors could have been averted.

***Gottesman's Subsequent August 22, 2022 Letter Continued to Falsely Represent that There Were Others That Had Invested In the Plaintiff LLCs and Owned the Majority of Their Shares.***

29. Even months after the formation of November Acquisitions and December Acquisitions, Gottesman continued to violate his fiduciary duties to the Plaintiff LLCs and his duties to the Plaintiff Investors by continuing to conceal the fact that there were in fact no other members that had invested in the Plaintiff LLCs—that 90 percent of the purported investment capital was pure vapor.

30. Specifically, in the summer of 2022, nine months after the formation of November Acquisitions and eight months after the formation of December Acquisitions, the Plaintiff Investors were told that the sale of Stripe stock—the transaction for which December Acquisitions had been formed--had fallen through. The

-11-

Plaintiffs were told that the buyer had balked and wanted to pull out of the deal. Plaintiff Bad Gremlin asked for contact information for December Acquisitions' other investors, so the investors could convene and discuss what action should be taken next. Of course, there had never been an actual party interested in buying the Stripe stock from December Acquisitions. Nor were there any other investors in December Acquisitions to discuss this with—only Bad Gremlin had actually signed a Subscription Agreement and invested funds in December Acquisitions.

31. After the fictional buyer had purportedly pulled out from the deal to buy the non-existent Stripe stock, in August 2022, an employee of Plaintiff Bad Gremlin contacted Gottesman to request contact information for the other December Acquisition investors. Gottesman responded to Bad Gremlin's request in a letter dated August 22, 2022. Ex. 6. In his August 22, 2022 Letter Gottesman identified other (non-existent) investors in December Acquisitions, including D1 Capital (which purportedly owned 50 percent of the equity), Sean Grusd (10 percent), Earl Goldstein (15 percent), and Gabe Goldstein (15 percent). Ex. 6 at 2. Gottesman characterized this information revealed in his August 22, 2022 letter as "highly confidential" and expressly forbade Plaintiffs from "contact[ing] the Members directly for any purpose," preventing Plaintiffs from conducting their own further inquiry. Ex. 6.

32. Gottesman was negligent, grossly negligent and reckless in not knowing that his identification in the August 22, 2022 letter of the other purported investors in December Acquisitions was false. The purported existence of any other investors in

-12-

December Acquisitions had been a lie from the outset, from the time at which Gottesman negotiated and prepared the documents organizing the LLC.

33. If at any time from the initial circulation of the Operating Agreement and Subscription Agreement through the discovery of the theft of funds in December 2022 the Investor Plaintiffs had been told the truth—that there were no other investors in either November Acquisitions or December Acquisitions--they could have exerted control as majority shareholders, replaced Grusd as managing member and avoided or minimized the harm to the Plaintiff LLCs. However, even as late as his August 22, 2022 response to Ms. Sternstein's request for contact information, Gottesman continued to provide the Plaintiffs with false information and provided that only on the condition that he Plaintiff Investors not attempt to contact the bogus "other" investors.

34. Although Grusd had already stolen all of the money that had been invested in November Acquisitions and December Acquisitions by late spring of 2022, he had not yet spent it all. Absent Gottesman's false statements in the August 22, 2022 email to Bad Gremlin, December Acquisitions would have been able to recover a significant portion of the looted funds stolen by Grusd..

35. Gottesman's failure to properly perform his duties to the Plaintiff LLCs as their attorney, his failure to exercise a reasonable degree of care on their behalf and his failure to act with the loyalty required of a reasonably competent attorney representing a client have directly and proximately led to the losses incurred by the Plaintiff LLCs, which upon receipt of Plaintiff's funding had been robbed by their managing member, Sean Grusd.

36. For his part, Grusd has now pleaded guilty to criminal fraud, resulting in a seven-year prison sentence to be followed by three years of supervised release. *See, United States v. Sean Grusd*, No. 23 CR 193 (N.D. Ill.). The Court ordered Grusd to surrender to the United States Marshal and begin serving his sentence in January 2025.

37. Grusd also pleaded guilty in the civil action brought by the Plaintiff LLCs and their individual investors seeking recovery of the stolen funds invested in the Plaintiff LLCs. *Bad Gremlin et al. v. Sean Grusd*, Case No. 1:22-cv-11000 (SDNY). Following judgment, the Plaintiff Investors in the civil action against Grusd managed to recover a small portion of the stolen funds—approximately $4 million of the $23 million stolen. Grusd spent the stolen funds during the months between the initial investment in November Acquisitions and the discovery of the fraud. Throughout this time, Gottesman served as Counsel to the Plaintiff LLCs and the sole identified Investor Relations contact.

38. But for Gottesman's ongoing and repeated breaches of fiduciary duty, inattention, lack of diligence, and gross negligence and the negligent misrepresentations he made to the Plaintiffs, Grusd's scheme would never have succeeded. Gottesman provided personal assurance to back the false claims of significant personal wealth invented by Grusd, when Gottesman knew, or should have known in the exercise of reasonable care that Wells Fargo had no account corresponding to the $50 million in personal assets claimed by Grusd.

39. Gottesman also negotiated, drafted and circulated the Operating Agreement and Subscription Agreement for the LLC Plaintiffs; in each case falsely identifying others as investors.

40. Having featured the other investors in the Subscription and Operating Agreement documents (and also referring to them in correspondence with Remora and Bad Gremlin) Gottesman breached his professional duty of care and duty of loyalty in failing to advise the Plaintiff LLCs or their investors that there were no other investors. He also negligently and recklessly misrepresented critical information which, as the sole Investor Relations contact for the LLCs he was obligated to provide.

41. By failing to take even the most rudimentary precautions on behalf of the Plaintiff LLCs, he allowed them to be looted by their dishonest manager and allowed the dishonest manager ample time to spend the stolen money, $19 million of which has never been recovered.

## COUNT I
## PROFESSIONAL MALPRACTICE

42. Plaintiffs restate and reallege the allegations of paragraphs 1 through 41 and incorporate them herein by reference.

43. An attorney-client relationship existed between the Plaintiffs and defendant Gottesman.

44. Defendant Gottesman owed plaintiffs a fiduciary duty of care arising either from the attorney-client relationship (Plaintiff LLCs), or arising out of the special relationship of trust and confidence that existed between Gottesman the attorney for the Plaintiff LLCs and the Plaintiff Investors, who were, unbeknownst to them at the time—the sole shareholders of the Plaintiff LLCs.

45. As set forth above, Gottesman committed professional malpractice and breached his duties to the Plaintiffs, allowing Grusd, the dishonest managing member, to steal the money that the Plaintiff Investors had invested in the Plaintiff LLCs. Gottesman's professional malpractice also allowed ample time to enable Grusd to transfer the entire investment made by the Plaintiff Investors to his own personal account. Gottesman then affirmatively misrepresented the existence and composition of other (non-existent) members of the LLCs, which prevented the Plaintiffs from appointing honest, uncorrupt managing members to pursue recovery from Grusd while there were still assets that could have been recovered.

46. As a result of Gottesman's professional malpractice, Plaintiffs suffered actual damages in excess of $22 million.

## COUNT II
## NEGLIGENT MISREPRESENTATION

47. As set forth in detail above, Gottesman disseminated false and material information to the Plaintiff Investors and also withheld information which he knew or should have known was necessary to make certain other statements of material fact not misleading. Gottesman was careless and negligent in ascertaining the truth of the statements made by Grusd.

48. Gottesman made these statements with an intention to cause the LLC Plaintiffs and the Investor Plaintiffs to act. Gottesman's carelessness and negligence induced the Plaintiff LLCs and the Plaintiff Investors to act, to make further investments in the Plaintiff LLCs and allowed Grusd to continue as manager while he stole the Investor LLCs funds and dissipated the assets of the Plaintiff LLCs. These acts and failures to act by Gottesman proximately led to the damages suffered by all Plaintiffs.

49. Further, as Counsel to December Acquisitions LLC and to November Acquisitions LLC, Gottesman owed the Plaintiff LLCs entities fiduciary duties of care and fidelity, including a duty to impart correct and not misleading information to the Plaintiff LLCs.

50. Moreover, as the sole identified "Investor Relations" contact for December Acquisitions LLC and November Acquisition LLC, Gottesman had entered into a special or privity-like relationship imposing a duty on Gottesman to impart correct

information concerning the management, composition, operations and finances of December Acquisitions LLC and November Acquisitions LLC to the Plaintiff Investors.

51. This special or privity-like relationship was established by a relationship of trust or confidence between the Plaintiff Investors and Gottesman, the sole "Investor Relations" contact identified by the LLCs. That relationship created a duty on the part of Defendant Gottesman to impart correct information, including the specialized knowledge or expertise that he had or should reasonably have had and disseminated to the Investor Plaintiffs with regard to the management, composition operations and finances of the Plaintiff LLCs.

52. The Plaintiff LLCs and the Plaintiff Investors reasonably relied upon Gottesman to provide accurate and complete information concerning the management, composition, operations and finances of December Acquisitions and November Acquisitions.

53. The information provided to the LLCs by Gottesman, their Counsel, was materially false and materially misleading. Other information which should have been supplied to make the information provided by Gottesman not misleading was never provided.

54. These acts and failures to act by Gottesman proximately caused the damages suffered by the Plaintiffs.

**PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs seek judgment against defendant Baruch Gottesman, d/b/a Gottesman Legal Services and all relief available as a result of his unlawful

actions including all damages for the harm Plaintiffs have suffered as a result of Gottesman's intentional, reckless and grossly negligent acts, and his breaches of fiduciary duties as legal counsel to November Acquisitions, and December Acquisitions and their investors. Plaintiffs also demand interest on the sums due, legal fees incurred and their costs, and such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs request a jury trial on all questions of fact raised by his Complaint.

Respectfully submitted,
NOVEMBER ACQUISITIONS SPV LLC,
DECEMBER ACQUISITIONS SPV LLC,
BAD GREMLIN LLC, AND
REMORA LLC

Date: March 24, 2025

By: /s/ *Charles S. Bergen*
Attorney for Plaintiffs

Charles S. Bergen
Peter S. Roeser | Darrell J. Graham
**ROESER TANNER & GRAHAM LLC**
Two North Riverside Plaza, Ste. 1850
Chicago, IL  60606
Phone: (312)300-2525
cbergen@rtglaw.com
proeser@rtglaw.com
dgraham@rtglaw.com